1  Michael Gibson Muir
   19 Inglewood Ln.
2  Bloomington, IL 61704
   712-309-6121
3

4

5

6

7              IN THE UNITED STATES DISTRICT COURT

8                  FOR THE DISTRICT OF ARIZONA

9

10  Michael Gibson Muir                    )
                                           )
11          Plaintiff,                     )
                                           )
12      v.                                 )        **Case No. 2:19-cv-05887-DGC**
                                           )
13                                         )
14  L3Harris Technologies, Inc., a Delaware )
    for-profit corporation                 )
15                                         )
                                           )
16          Defendant.                     )

17      **PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT'S MOTION TO**

18                   **DISMISS & BRIEF IN SUPPORT**

19

20

21

22

23

24

25

26

27

28

Plaintiff, Michael Gibson Muir ("Muir"), pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully moves the Court to deny Defendant, L3Harris Technologies, Inc. ("L3")'s Motion to Dismiss. In support of this motion, Muir relies on the following brief and incorporated memorandum of points and authorities.

## I. BACKGROUND AND SUMMARY OF ARGUMENT

### A. Introduction

Mr. (Future) Justice Louis Brandeis wrote in 1890:

> "Ways may some day be developed by which the government, without removing papers from secret drawers, can reproduce them in court, and by which it will be enabled to expose to a jury the most intimate occurrences of the home... Can it be that the Constitution affords no protection against such invasions of individual security?"

["FAST. FORWARD."][1] one-hundred and twenty-eight years to August 9, 2018. L3's use of advanced technology in exposing Muir's most "intimate occurrences" while he was in State custody at IWA is confirmation of Justice Brandeis' prescient words and Muir prays the Court finds the Constitution affords him protection from L3's "invasion".

Judge Posner stated in *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982):

> "We do not want to pretend that the line between action and inaction, between inflicting and failing to prevent the infliction of harm, is clearer than it is. If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit."

---

[1] L3's corporate motto (3/6/20 - https://www.l3harris.com). L3 has designated itself a leader in the field of checkpoint security and wields State power in its development of privacy-invading technologies in foreign countries not bound by United States law or the U.S. Constitution.

Continuing in the vein of Judge Posner's analogy, L3 abused State power and "[threw Muir] into a snake pit" when it unlawfully and unconstitutionally violated his privacy and revealed his hidden congenital disability using its proprietary ATR software. This outrageous act of "deliberate indifference" set in motion a chain of unstoppable events that led directly to Muir's cruel, unusual and unnecessary punishment that "shocks the conscience" and cannot be tolerated in civilized society. There is no defense or immunity that L3 or any defendant[2] can claim because violation of International Covenant on Civil and Political Rights Article VII is not permitted under any circumstance, including the prevention of terrorism or war, and for this and other reasons as stated below, L3's Motion to Dismiss must be denied.

**B. Timeline of Events**

1. 8/9/18 – L3 unlawfully instigates Muir's false imprisonment and torture at IWA in violation of United States Constitution Amendment IV, V and VIII and International Covenant on Civil and Political Rights Article VII, IX, X, XII and XVII.

2. 9/16/19 – Muir presents his August 9, 2018 personal injury claim to TSA

3. 11/1/19 – Muir demands TSA return his August 9, 2018 scan to him

4. 11/19/19 – TSA refuses Muir's 11/1/19 demand

5. 12/2/19 – Muir files CV2019-013495 against L3, demands his August 9, 2018 scan

6. 12/23/19 – L3 removes CV2019-013495 to District of Arizona

7. 1/29/20 – L3 denies it possesses or ever possessed Muir's August 9, 2018 scan

---

[2] Including defendants yet to be joined under Federal Rule of Civil Procedure 19 (a)(1)(A) due to the mandatory FTCA waiting period set forth in 28 U.S.C. § 2675(a).

1

**C. Summary of Argument**

2

L3 is an "on-notice" Title IV Organization bound by Rehabilitation Act of 1973

3

Section 504 ("Section 504")[3]. Section 504 creates a private right of action for

4

compensatory damages and injunctive relief confirmed in *Barnes v. Gorman*, 536 U.S.

5

181 (2002) and *Mark H. v. Lemahieu*, 513 F.3d 922 (9th Cir. 2008).

6

There are no exceptions to liability under Section 504 and L3 is not entitled to

7

"SAFETY Act" defenses with regards to Muir's claim for injunctive relief requiring L3

8

to stop discriminating against him solely because of his congenital disability.

9

6 U.S.C. § 442(d)(1) states in part (emphasis added):

10

11

"Should a product liability or other lawsuit be filed for claims… *and such
claims result or may result in loss to the Seller*, there shall be a rebuttable
presumption that the government contractor defense applies in such
lawsuit."

12

13

14

15

16

6 U.S.C. § 444(5) states:

17

"The term "Loss" means death, bodily injury, or loss of or damage to
property, including business interruption loss."

18

19

20

Muir's claim for injunctive relief requiring L3 to stop discriminating against him

21

solely because of his disability poses no risk of "loss" to L3. Therefore, the "government

22

contractor" defense does not apply, the "SAFETY Act" "system of risk management" is

23

not triggered and the cause of action survives L3's Motion to Dismiss.

24

25

26

[3] L3 failed to respond to COUNT 1 of Muir's First Amended Complaint. L3
cannot receive federal funds into its "Commercial Aviation" division in order to instruct
one class of citizen (student using Stafford Loan program) in the ability to fly between
the several states while simultaneously using those same federal funds to discriminate
against another class of traveler (Muir – a citizen with a congenital physical disability).

27

28

As to Muir's claims for relief aside from injunctive relief, L3 is liable to Muir because L3 had an "Affirmative Duty" of "Reasonable Care" to Muir because of the "Special Relationship" the difference in power between L3 and Muir created while Muir was in State custody (instigated solely by L3, solely because of L3's unlawful Section 504 discrimination against Muir due solely to his congenital disability).

L3 breached its duty to Muir through conduct which rises to the standard of "deliberate indifference" and which placed Muir in a worse position than he would have been had he not been unwillingly exposed to a known danger created by L3 while in State custody.

L3's unlawful and unconstitutional conduct is the proximate cause of Muir's injuries and L3 is not immune from suit because there is no defense to violation of United States Constitution Amendment IV, V and VIII or International Covenant on Civil and Political Rights Article VII.

L3 had a clear and compelling motive to act with "deliberate indifference" towards Muir and ignore its Section 504 duty to Muir in order to minimize the cost of production of its proprietary ATR software[4] and because it sells that proprietary ATR software to foreign States not bound by Section 504.

L3 had the means to ignore its Section 504 duty to Muir because it holds a monopoly on the supply of ATR software to DHS. L3 demonstrated the power of its supply monopoly through its deliberately indifferent act of continuing to sell defective

---

[4] L3 is a publicly-traded multinational corporation liable first to its shareholders to maximize profit and return on investment

ATR software cycles to DHS despite L3's certain knowledge that (1) false threat alarms were frequent (2) those frequent false threat alarms led to unnecessary and invasive pat-downs and (3) with regards to Muir in the instant case, that:

> "The identification of a congenital disability in the groin area is within the authorized capabilities of AIT "using backscatter x-rays or millimeter waves and devices referred to as whole-body imaging technology or body scanning machines."[5]

L3 had the opportunity to ignore its Section 504 duty to Muir because it solely controls the ATR software source code utilized by DHS in passenger screening[6].

Defendant's Motion to Dismiss Document 14-1, Page 4 states:

> "The issuance of Certification under the SAFETY Act does not constitute compliance with any statutory or regulatory requirements other than those imposed by the SAFETY Act and the Regulations, and does not relieve the Seller of any obligations it might have under any other Federal, State or local statutes or regulations."

L3 is not relieved of its "obligations" to Muir under the U.S. Constitution, Section 504 and Federal Common Law and L3 is liable to Muir under Section 504 and Federal Common Law as interpreted by this Court.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain sufficient factual allegations to state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

---

[5] L3's Motion to Dismiss (Pg. 8)

[6] Despite DHS foreshadowing a justified end to L3's monopoly on ATR software supply by using taxpayer funds to conduct the Passenger Screening Algorithm Challenge

*Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 678. In determining whether a complaint states a plausible claim for relief, a court must draw on its own judicial experience and common sense. *Id*. at 679.

**III. ARGUMENT**

**A. Jurisdiction of the Court**

The Court stated in *Bush v. Lucas*, 462 U.S. 367 (1983):

"The federal courts' power to grant relief not expressly authorized by Congress is firmly established. Under 28 U.S.C. § 1331, the federal courts have jurisdiction to decide all cases "aris[ing] under the Constitution, laws or treaties of the United States". This jurisdictional grant provides not only the authority to decide whether a cause of action is stated by a plaintiff's claim that he has been injured by a violation of the Constitution, but also the authority to choose among available judicial remedies in order to vindicate constitutional rights."

This Court has the power to grant Muir relief and Muir prays the Court will vindicate his constitutional rights through its well-defined jurisdictional authority to decide such cases.

L3 abandoned Muir in a "[checkpoint purgatory] snake pit" of its own creation when it recklessly violated his well-established right to privacy and individual security and this Court has the authority to pull him out of that "pit" and restore his ability to exercise his statutory right to travel between the several states by air and restore his personal liberty and security and protect him from future unconscionable "invasions" of his "most intimate occurrences" by L3's advanced proprietary technology.

**B. Constitutional Clauses, Statues and Treaties intended to protect Muir**

Society recognized that the discrimination Muir faces solely because of his congenital disability is wrong and Congress enacted a series of laws to protect Muir from discrimination solely because of his disability in certain circumstances.

L3's "Duty of Reasonable Care" to Muir is created by the following procedures:

**(i) Muir's Right to Privacy** – United States Constitution Amendment IV, International Covenant on Civil and Political Rights ("ICCPR") Article XVII, Arizona Constitution Article II Section 8.

**(ii) L3's Duty to Muir** - United States Constitution Amendment IV, V, VIII, ICCPR Article II, VII, IX, X, XII, United Nations Convention against Torture (8 C.F.R. § 208.18), Arizona Constitution Article II Section 4, Arizona Constitution Article II Section 15, 29 U.S.C §§ 701, 794, 49 U.S.C §§ 40103(a)(2), 44901(l)(a)(i), 44902, 46301, 46503 and 49 C.F.R. §§ 1540.107, 1540.109.

**(iii) Muir's Right to Private Action** – Rehabilitation Act of 1973 Section 504 and 505(a)(2), 28 U.S.C. § 2679(b)(2)(A), Federal Common Law (*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), *Davis v. Passman,* 442 U.S. 228 (1979) and *Carlson v. Green,* 446 U.S. 14 (1980).

**C. L3's Breach and Muir's Injuries**

L3 breached its duty of reasonable care to protect Muir from the foreseeable risk of unnecessary harm while he was in State custody when it breached its affirmative duty to warn Muir of a known danger it created and which Muir could not unilaterally avoid without being punished.

**(i) Torture**

ICCPR Article VII states:

"No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment. In particular, no one shall be subjected without his free consent to medical or scientific experimentation."

United Nations Convention against Torture states:

"The term "torture" means any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. It does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions."

Congress held (138 Cong. Rec. S4781-01 (daily ed., April 2, 1992)) that:

"The United States considers itself bound by Article 7 to the extent that "cruel, inhuman or degrading treatment or punishment" means the cruel and unusual treatment or punishment prohibited by the Fifth, Eighth and/or Fourteenth Amendments to the Constitution of the United States."

Muir has never been subject to sanctions (Muir has never been arrested and was detained against his will for the first time in his adult life on August 9, 2018). Muir has prolonged mental pain and suffering. A defendant's reckless disregard for a known outcome is equivalent to intentional conduct. Therefore, the infliction of pain upon Muir due to the deliberate indifference to his serious medical needs meets the intent requirement. Muir is the only person who knows how to push his irreducible intestine

9

bulge from his right scrotum up through his inguinal canal and back into his abdominal cavity without causing severe pain and risk of intestinal incarceration or strangulation, which can result in death. Therefore, Muir was placed at risk of severe physical pain and death when L3 discriminated against him solely because of his congenital disability. Muir was under the physical control of the State for the purpose of interrogation and the State was aware of what was happening and did nothing to stop it and all of this happened solely because of L3's revelation of Muir's hidden congenital disability at his right groin.

**(ii) Deliberate Indifference to Serious Medical Needs**

The Court established in *Carlson v. Green,* 446 U.S. 14 (1980) that the deliberate indifference to serious medical needs violated U.S. Constitution Amendment VIII.

The defect in L3's proprietary ATR software which manifested as the inability to differentiate between human tissue beneath Muir's skin and foreign objects on the surface of his skin during the search of his passenger screening image is the deliberate indifference to Muir's serious medical needs as a TSA agent would not have been required to "pat-down" Muir's right groin if L3's algorithm would have functioned within United States law and not searched data representing Muir's entirely human tissue congenital disability beneath his skin.

**(iii) Degrading Treatment and Dehumanization**

Muir was publicly degraded at IWA when, in front of many people at a busy airport checkpoint, he was required to submit to a physical pat-down at the exact site of his painful medical emergency solely because of his disability in order to be released from State interrogation and avoid further punishment.

No one other than Muir had ever touched his right groin during the type of serious health emergency Muir experienced on August 9, 2018. The fact that a TSA agent, using the authority of the State, was the first person to violate Muir's personal security and sanity and touch him at his right groin during a medical emergency when not even medical professionals or his wife had touched him there "shocks the conscience" and cannot be tolerated in the United States of America.

**(iv) Cruel and Unusual Punishment**

United States Constitution Amendment VIII traces its origins to Magna Carta. Muir was punished in a cruel and unusual fashion by being physically touched at the site of his congenital disability (for the purposes of State interrogation) during a medical emergency for the sole, arbitrary reason of having his hidden congenital disability at his right groin unlawfully revealed as a false threat alarm by L3 during passenger screening.

**D.  L3 is not immune from suit**

L3 is not entitled to immunity from suit for at least four reasons. First, L3's proprietary ATR software is not "QATT" because DHS does not include "software" in its definition of the approved "Technology". Second, ATR software was deployed in direct response to privacy concerns raised in *EPIC v. DHS* (2011), not a designated "act of terrorism" as is required to trigger "SAFETY Act" protections. Third, government contractors are not entitled to "sovereign immunity" and they cannot violate the U.S. Constitution, and fourth, L3 is not entitled to immunity from suit when there is no risk of "loss" to the seller and therefore Muir's claim for injunctive relief falls outside of any "SAFETY Act" protections L3 could claim.

**(i) L3's proprietary ATR software is not "QATT"**

L3 did not receive "QATT" Certification or Designation from DHS for its proprietary ATR software. With regards to L3's "QATT", DHS states (Defendant's Motion to Dismiss Document 14-1, Page 6):

> "The Technology is a security portal that uses millimeter-wave scanning technology to produce three-dimensional images of subjects to detect threat objects, if present, on scanned subjects… Also included in the Technology are the following support services: training, installation, maintenance services, manuals and technical documents."

L3's proprietary ATR software is not "QATT" for at least two reasons. First, DHS states that the Certified "Technology" is a "portal" (not the separate proprietary software source code that analyzes the data image produced by the "portal"). Second, ATR software is specifically not listed in "Also included" section. Therefore, L3's proprietary ATR software, which is a separate security product sold to DHS in separate cycles, is not "included" in the Certified "Technology".

DHS also states (emphasis added):

> "The Technology *uses* Automatic Target Detection ("ATD") software, a software solution that analyzes scanned data and highlights threats and anomalies"

DHS describes L3's proprietary ATR software as a "solution". "Solution" does not equate to inclusion, but relates instead to the Congressional privacy requirement that the "use" of ATR software fulfills.

The word "uses" is not equivalent to "includes". The fact that L3's portal *uses* L3's proprietary ATR software does not mean that DHS "QATT" Certification of one

product (a "portal"), extends to another related but separate product (proprietary ATR software running on that portal).

**(ii) ATR software was deployed directly due to privacy concerns**

The use of ATR software to replace a TSA agent during the search of passenger data images was required by Congress as a result of *Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.*, 653 F.3d 1 (D.C. Cir. July 15, 2011).

The "SAFETY Act" system of risk management is not triggered unless the technology deployed was in response to an "act of terrorism". L3 is not entitled to any defenses embodied in the "SAFETY Act" because its proprietary ATR software was deployed directly due to privacy concerns, which is exactly the issue in the instant case, not a designated "act of terrorism" as is required by the statute.

**(iii) Government Contractors cannot violate the U.S. Constitution**

The Ninth Circuit held in *Rodriguez v. Lockheed Martin Corp.* 627 F.3d 1259, 1265 (9th Cir. 2010):

> "Although the source of the government contractor defense is the United States' sovereign immunity, we have explicitly stated that 'the government contractor defense does not confer sovereign immunity on contractors'".

L3 does not have "sovereign immunity" and is bound by ICCPR Article II.

**(iv) L3 is not entitled to "SAFETY Act" defenses for injunctive relief**

As previously stated, L3 is not entitled to immunity from Muir's claim for injunctive relief requiring L3 to stop discriminating against him solely because of his congenital disability because it falls outside the "SAFETY Act" management system.

1

**E. L3's "Affirmative Duty of Reasonable Care" to Muir**

2

3
The Court stated in *DeShaney v. Winnebago County Dept. of Social Servs.*, 489

U.S. 189, 199 - 200 (1989):

4

5
> "When the State takes a person into its custody and holds him there against
> his will, the Constitution imposes upon it a corresponding duty to assume
> some responsibility for his safety and general well-being."

6

7
> "The affirmative duty to protect arises not from the State's knowledge of
> the individual's predicament or from its expressions of intent to help him,
> but from the limitation which it has imposed on his freedom to act on his
> own behalf."

8

9

10
> "In the substantive due process analysis, it is the State's affirmative act of
> restraining the individual's freedom to act on his own behalf – through
> incarceration, institutionalization, or other similar restraint of personal
> liberty -- which is the "deprivation of liberty" triggering the protections of
> the Due Process Clause, not its failure to act to protect his liberty interests
> against harms inflicted by other means."

11

12

13

14

15

16
**(i) L3's "Custody" of Muir triggered the Due Process Clause**

17
L3's proprietary ATR software performed the State's administrative search of

18
Muir's passenger data "image" at IWA on August 9, 2018 and was solely and directly

19

20
responsible for the deprivation of his liberty when it abused State power through its

21
reckless disregard for Muir's safety and unlawfully placed him in State custody when it

22
illegally, unconstitutionally and unreasonably searched his private health information

23

24
beneath his skin and returned a false threat alarm at his right groin solely because of his

25
human tissue congenital disability which required a physical pat-down of his right groin

26
in order for Muir to be lawfully released from State custody.

27
Liberty includes the right to be free from coercion. The Court stated in *Bumper v.*

28

14

*North Carolina*, 391 U.S. 543 (1968):

> "Where there is coercion, there cannot be consent".

And in *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973):

> "If, under all the circumstances, it has appeared that the consent was not given voluntarily – that it was coerced by threats of force, or granted only in submission to a claim of lawful authority – then we have found the consent invalid and the search unreasonable".

The Ninth Circuit stated in *United States v. Davis,* 482 F. 2d 893, 914 (9th Cir. 1973):

> "The government may not justify a search on the basis of "consent" unless it first establishes that such consent was given, expressly or by implication".

Muir never consented to the search of his private health information by L3 and would never have consented to such an unlawful invasion of privacy had he been warned of it in advance of entering IWA's security checkpoint.

Mr. Justice Stevens wrote in *Washington v. Harper*, 494 U.S. 210, 297 (1990):

> "Every violation of a person's bodily integrity is an invasion of his or her liberty. The invasion is particularly intrusive if it creates a substantial risk of permanent injury and premature death. Moreover, any such action is degrading if it overrides a competent person's choice to reject a specific form of medical treatment."

Muir's liberty and privacy were invaded and violated by L3's reckless and unlawful search of his private health information at IWA on August 9, 2018, and this violation led to unnecessary and lasting damage and the degrading and humiliating experience of having his private medical choices (and by extension, his private

relationship with the Creator) lead directly to his mandatory unlawful seizure and cruel and unusual punishment solely because of his congenital disability during State interrogation he could not unilaterally end without punishment.

**(ii) L3's Creation of Danger for Muir**

L3 abused State power to place Muir in a worse position than he would have been had he not come into mandatory contact with L3's defective software product while in State custody.

The Ninth Circuit was the first court of appeals to adopt the "state-created danger" theory and held in *Wood v. Ostrander,* 879 F.2d 583 (9th Cir. 1989) (quoting *Ketchum v. Alameda County,* 811 F.2d 1243, 1247 (9th Cir. 1987)), that the "state-created danger" theory requires that the defendant affirmatively placed the plaintiff in a position of danger. L3 stated in its Motion to Dismiss (Pg. 8):

> "The identification of a congenital disability in the groin area is within the authorized capabilities of AIT "using backscatter x-rays or millimeter waves and devices referred to as whole-body imaging technology or body scanning machines."

L3 therefore acknowledges that, under the authority of the State, it created and was aware of a known danger for Muir and it knowingly disregarded its Section 504 duty to warn Muir of such a danger. The capability of a body scanning machine to identify a hidden congenital disability does not authorize L3, an organization bound by Section 504, to perform an unconstitutional and unlawful search of that private health information using its proprietary ATR software and then discriminate against Muir solely because of the congenital disability it unlawfully revealed.

16

1

**(iii) L3 and Muir's "Special Relationship"**

2

The court held in *Jones v. United States,* 308 F.2d 307, 310 (D.C. Cir. 1962):

3

4

5

6

7

8

"There are at least four situations in which the failure to act may constitute breach of a legal duty. One can be held criminally liable: first, where a statute imposes a duty to care for another; second, where one stands in a certain status relationship to another; third, where one has assumed a contractual duty to care for another; and fourth, where one has voluntarily assumed the care of another and so secluded the helpless person as to prevent others from rendering aid".

9

10

11

The status relationship between Muir and L3 meets the requirements for a

*DeShaney* "Special Relationship" and corresponding "legal duty" because Muir's actions

12

are bound by federal law once he presents himself for security screening (Muir is not in

13

14

the "free world" during the administrative screening process) and L3 acts on behalf of the

15

State when its proprietary ATR software searches Muir's passenger data image and solely

16

decides whether he is free to lawfully leave State custody or is subjected to cruel and

17

unusual punishment solely because of his congenital disability. This significant power

18

19

imbalance creates a duty of reasonable care from L3 to Muir.

20

L3's decision to retain total control of its proprietary ATR software source code

21

was a "voluntary action", as was its decision to sell the defective code cycle that violated

22

Muir's privacy at IWA on August 9, 2018.

23

24

L3 created a "Known Risk" using State authority because it had certain knowledge

25

that false threat alarms during passenger screening image searches were a major problem

26

that led to unnecessary and invasive pat-downs and L3 failed to correct it.

27

**(iv) The "Reasonable Person" Standard**

28

A reasonable person would agree with Muir that (as stated by L3 - Motion to Dismiss, Pg. 12):

> "There is an active market of prospective buyers seeking to decipher the physiological makeup of the "congenital defect" in Plaintiff's right groin".

In 2018, the global medical imaging market was a multi-billion dollar industry and according to the U.S. Veteran's Administration, Muir's health condition at issue occurs, in varying degrees of severity and for varying reasons (not all are a result of a congenital defect), in approximately 25% of all men.  Inguinal hernia surgery is one of the most performed surgeries and is far from perfected. Therefore, it is reasonable to assume that there is in fact a large prospective market of buyers for information deciphering the physiological makeup of Muir's very severe but statistically common health problem, including hostile foreign governments and multinational corporations like L3.

**(v) "Foreseeable Risk" and "Unnecessary Harm"**

L3 knew that its millimeter wave scanners had the capability of revealing passenger's hidden disabilities. L3 knew that its proprietary ATR software caused frequent false threat alarms which resulted in unnecessary and intrusive pat-downs. L3 knew that it was responsible for searching the passenger screening image of over two million passengers per day. L3 knew that it is illegal to discriminate against someone solely because of a disability. L3 knew that millions of people have disabilities, some of which are hidden. L3 knew it cannot violate the U.S. Constitution as a government contractor. L3 knew it is bound by Rehabilitation Act of 1973 Section 504. L3 knew or should have known that its proprietary ATR software's unlawful inability to distinguish

human tissue underneath the skin from a foreign object on the surface of the skin would present a danger to individuals with hidden disabilities.

L3 caused Muir unnecessary harm because discriminating against Muir while he is in State custody solely due to the unlawful revelation of his hidden congenital disability serves no legitimate government interest.

**(vi) L3's "Duty of Reasonable Care" to Muir**

L3 had a duty of reasonable care to Muir to warn him of known dangers it created and that Muir did not know about and did not consent to and could not legally unilaterally avoid once he had submitted to the passenger screening process as allowing passengers to leave during the process would threaten checkpoint security integrity. Muir's injuries could not and would not have happened except for L3's unlawful invasion of his privacy and L3 is liable to Muir for his injuries.

**IV. CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiff Muir respectfully requests that Defendant L3Harris Technologies, Inc.'s Motion to Dismiss be denied.

Dated: this 13th day of March, 2020

Respectfully submitted,

_____

MICHAEL GIBSON MUIR